In the Missouri Court of Appeals
 Western District

HARRY J. WILLIAM, )
 Appellant, )
v. ) WD83859
 )
STATE OF MISSOURI, ) FILED: October 12, 2021
 Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY
 THE HONORABLE SHANE T. ALEXANDER, JUDGE

BEFORE DIVISION ONE: ALOK AHUJA, PRESIDING JUDGE, LISA WHITE HARDWICK
 AND ANTHONY REX GABBERT, JUDGES

 Harry William appeals from the judgment denying his Rule 29.15 motion

after he was convicted of first-degree statutory rape. William contends the motion

court erred in denying his claim that his appellate counsel was ineffective for

failing to file a motion in the Missouri Supreme Court to transfer the case to that

court after we affirmed his conviction and sentence on direct appeal. For reasons

explained herein, we affirm.

 FACTUAL AND PROCEDURAL HISTORY

 In March 2012, William was arraigned on a charge of first-degree statutory

rape. The charge alleged that, between May and June 2010, he knowingly had

sexual intercourse with a child less than 14 years old. In September 2014, a jury
convicted him of the charge and recommended a sentence of 18 years in prison,

which the court imposed.

 On direct appeal, William asserted that the circuit court abused its

discretion and violated his constitutional rights in denying his motions for a

Pingelapese interpreter and overruling his motion to dismiss when an interpreter

could not be found.1 State v. William, 505 S.W.3d 344, 349 (Mo. App. 2016).

Because the record did not support his claim that the circuit court ever denied his

request for a Pingelapese interpreter (the record showed that the court actually

twice granted his motions), we only addressed his claim that the court erred in

overruling his motion to dismiss when an interpreter could not be found. Id.

 In analyzing this issue, we looked first at the relevant statutes, specifically,

Section 476.803.1,2 which provides, “The courts shall appoint qualified

interpreters and translators in all legal proceedings in which the non-English

speaking person is a party or a witness.” Section 476.800(3) defines a “non-

English speaking person” as “any person involved in a legal proceeding who

cannot readily speak or understand the English language.” Id. at 350. We noted

that no case had applied these sections yet. Id. at 350 n.10. We then explained

that, before the enactment of these sections in 2004, “the only statutory reference

to interpreters was in section 476.060,” which states, “The courts may, from time

1
 William grew up on a small Micronesian island where he and fewer than 2,000 people spoke
Pingelapese, an oral language that is neither taught in schools nor used to conduct official
government business in the Federated States of Micronesia.

2
 All statutory references are to the Revised Statutes of Missouri 2016.

 2
to time, appoint interpreters and translators to interpret the testimony of

witnesses, and to translate any writing necessary to be translated in such court, or

any cause therein.” Id. at 350. We noted that, in applying Section 476.060, circuit

courts “have been accorded discretion to decide whether an interpreter was

needed.” Id. From this, we extrapolated that whether an individual meets the

definition of a “non-English speaking person” and whether a qualified interpreter

“shall” be appointed under Section 476.803.1 is a matter of the circuit court’s

discretion; therefore, we determined that we would review for an abuse of

discretion the court’s decision that William’s ability to speak and understand the

English language was sufficient for constitutional purposes and that no interpreter

was necessary to protect his rights. Id.

 William suggested that Missouri adopt a factor-based test to make this

determination. Id. at 350-51. Specifically, he proposed that we adopt the factors

used to select certified court interpreters,3 or other factors articulated in Gado v.

State, 882 N.E.2d 827, 830 (Ind. Ct. App. 2008).4 We found, however, that not only

3
 The court-certified interpreter requirements that William proposed we apply to determine
whether a defendant can speak or readily understand English included: “a grasp of a language
other than English sufficient to accurately translate proceedings; a native or native-like proficiency
in all working languages; knowledge and use of a broad range of vocabulary, including legal
terminology, subject-specific terminology, and slang; and a knowledge and use of cultural
nuances, regional variations, idiomatic expressions, and colloquialisms in all working languages.”
Id. at 351 (internal quotations omitted).

4
 In Gado, the Court of Appeals of Indiana stated that, to decide whether an interpreter is needed,
the circuit court should consider: (1) “the defendant's understanding of spoken and written
English”; (2) “the complexity of the proceedings, issues, and testimony”; and (3) “whether,
considering those factors, the defendant will be able to participate effectively in his or her
defense.” 882 N.E.2d at 830.

 3
did William fail to ask the circuit court to adopt and apply those factors and fail to

introduce evidence to demonstrate his inability to readily speak and understand

English on the basis of those factors, but many of his proposed factors go “far

beyond the standards applied to any other defendant in a criminal proceeding.”

William, 505 S.W.3d at 351. Instead, we found that courts in other jurisdictions

“have more persuasively applied the test for mental capacity in determining

whether a non-English speaking person was unable to participate in his or her

defense.” Id. Thus, we decided that the proper test is whether the non-English

speaking person has “the ability to consult with counsel and to understand the

proceedings against him or her.” Id.

 Applying this test to William, we found that the circuit court did not abuse

its discretion in concluding that he would not be denied his constitutional rights

without the assistance of an interpreter at trial. Id. at 352. Because we found no

abuse of discretion in the court’s decision to proceed to trial after ruling that

William readily spoke and understood English, we also rejected William’s claim

that proceeding to trial without an interpreter constituted a structural error. Id.

Having found no abuse of discretion in the court’s ruling that William readily

spoke and understood English and, therefore, the appointment of an interpreter

was not required to protect his constitutional rights, we affirmed his conviction

and sentence. Id. at 352-53. Following the issuance of our opinion, William’s

appellate counsel filed a motion for rehearing, or, in the alternative, an application

to transfer the case to the Missouri Supreme Court. We overruled the motion for

 4
rehearing and denied the application to transfer the case to the Supreme Court.

 William filed a pro se Rule 29.15 motion for post-conviction relief, which

was later amended by appointed counsel. In his amended motion, he alleged,

inter alia, that his appellate counsel was ineffective for failing to file a motion in

the Missouri Supreme Court seeking transfer of the case to that court. He

asserted that, if his appellate counsel had filed a motion for transfer, there is a

reasonable likelihood that the Missouri Supreme Court would have accepted

transfer because the meaning of the statutory phrase “readily speak or

understand the English language” has been interpreted in “numerous other

jurisdictions but never in Missouri.” He further alleged that the Court would have

“reversed the decision of the Court of Appeals since it failed to adopt a test,”

reversed his conviction and sentence, and remanded his case for a new trial.

 An evidentiary hearing was held. During the evidentiary hearing, William’s

appellate counsel testified that, after the Court of Appeals denied the motion to

transfer the case to the Supreme Court, she “absolutely” intended to file a motion

for transfer in the Supreme Court. She failed to put the filing deadline in her

calendar, however, and missed the deadline. She testified that this was an

“absolute gut-wrenching error,” as her strategy in William’s case was “to take it

as far up as [she] needed to.”

 The motion court entered its judgment denying William’s amended Rule

29.15 motion. With regard to this claim, the court found that, even if it assumed

that the failure to file a motion for transfer in the Supreme Court was objectively

 5
unreasonable, William did not prove that he was prejudiced by that failure.

William appeals.

 STANDARD OF REVIEW

 We review the denial of a post-conviction motion for clear error. Rule

29.15(k). The motion court’s findings and conclusions are clearly erroneous only

if a review of the entire record leaves us with a definite and firm impression that a

mistake was made. Shockley v. State, 579 S.W.3d 881, 892 (Mo. banc 2019). We

presume the motion court’s findings and conclusions are correct. Id.

 ANALYSIS

 In his sole claim on appeal, William contends the motion court clearly erred

in denying his claim that his appellate counsel was ineffective for failing to file a

motion in the Supreme Court to transfer his case to that court. “The standard for

evaluating a claim of ineffective assistance of appellate counsel is the same as the

standard for evaluating a claim of ineffective assistance of trial counsel.” Jarrett

v. State, 572 S.W.3d 143, 148 (Mo. App. 2019). “That is, a movant must prove his

appellate counsel’s performance fell below an objective standard of

reasonableness and that his defense was prejudiced by that unreasonable

performance.” Id. “To prevail on a claim of ineffective assistance of appellate

counsel, the movant must establish that counsel failed to raise a claim of error

that was so obvious that a competent and effective lawyer would have recognized

and asserted it.” Anderson v. State, 564 S.W.3d 592, 617 (Mo. banc 2018) (citation

omitted). He must also prove that, “if counsel had raised the claims, there is a

 6
reasonable probability the outcome of the appeal would have been different.” Id.

(citation omitted). The movant must establish both deficient performance and

prejudice, and if he fails to establish one, we need not consider the other.

Dawson v. State, 611 S.W.3d 761, 769 (Mo. App. 2020).

 William argues that, if appellate counsel had filed a motion for transfer in

the Supreme Court, there is a reasonable probability that the Court would have

granted transfer because the case was of “general interest” under Rule 83.02.

Specifically, he asserts that the case presented an issue of first impression,

“involved the standard all Missouri courts should apply in cases where a criminal

defendant’s grasp of English is questionable,” and interpreted statutes that had

not been previously construed. He further argues that he was prejudiced by

counsel’s failure to file the motion because there is a reasonable probability that,

if the Court had taken the case, the Court would have applied the multi-factor test

employed in Gado, determined that the absence of an interpreter rendered his

trial fundamentally unfair, and remanded the case for a new trial.

 We need not determine whether appellate counsel’s performance was

deficient because William failed to establish prejudice. Assuming that the

Supreme Court would have not only granted transfer but also applied the test that

William proposes, he has not demonstrated a reasonable probability that the

result of his appeal would have been different. William proposes that Missouri

courts should apply the three-factor test utilized in Gado, 882 N.E.2d at 830, which

provides that, in deciding whether an interpreter is needed, the circuit court

 7
should consider: (1) “the defendant's understanding of spoken and written

English”; (2) “the complexity of the proceedings, issues, and testimony”; and (3)

“whether, considering those factors, the defendant will be able to participate

effectively in his or her defense.” The court in Gado determined, like we

determined in our opinion on direct appeal, that the decision as to whether an

interpreter is necessary is a matter of circuit court discretion and, therefore, is

reviewed only for an abuse of discretion. Id.; William, 505 S.W.3d at 350.

Additionally, the court in Gado found that it was appropriate to “give substantial

weight to a trial court’s judgment as to the credibility of witnesses based on its

observance of evidence first hand.” 882 N.E.2d at 830-31.

 While the test that we articulated on direct appeal, whether the non-English

speaking person has “the ability to consult with counsel and to understand the

proceedings against him or her,” may not have listed the specific factors from

Gado, it is abundantly clear that we considered evidence relating to those factors

in finding no abuse of discretion in the circuit court’s decision to proceed without

an interpreter:

 Mr. William had been in this country for some eighteen years, or half
 of his life, when he was tried, and three witnesses indicated that he
 spoke English on the job and communicated in English with them.
 Defense counsel argued that, with just one exception—evidently
 when explaining the plea offers to Mr. William—his client was able to
 communicate with counsel in English, albeit at a slower pace than
 trial. Mr. William has not argued that he did not understand the
 charges or the proceedings, and, in fact, when he spoke at any
 length, particularly during sentencing, was clearly able to articulate
 his thoughts and concerns in English. The circuit court, which had
 Mr. William before it through at least thirty-three pre-trial hearings

 8
 and took evidence on the question of his grasp of the English
 language, was in the best position to form an opinion on whether, to
 the extent of being able to communicate with counsel and
 understand the proceedings against him, he could readily speak and
 understand English.

Id. at 352. With regard to the first factor from Gado, the evidence indicated that,

based upon the length of time William had spent in the United States, his

speaking English on the job, his conversations with defense counsel, and his 33

pre-trial appearances before the court, William was able to understand spoken

and written English.

 With regard to the second factor, we specifically addressed William’s

contention that the complexity of the proceedings, issues, and testimony required

that an interpreter be appointed before proceeding. We found that William “has

not argued that he did not understand the charges or the proceedings.” Id.

(emphasis added). We also rejected his argument that the court should have

considered whether he understood “court-related English,” noting that William

cited to no case law “requiring that, for due process purposes, a criminal

defendant must understand ‘court-related English.’” Id.

 Lastly, with regard to the third factor from Gado, William claimed that he

was not able to effectively participate in his defense because his lack of

confidence in “his ability to fully and accurately expressly himself in English in

response to questions” made him choose not to testify. Id. In rejecting this claim,

we noted that William cited no case law to support this contention and,

furthermore:

 9
 With any number of reasons that an individual might not wish to
 testify, including a fear of public speaking, a speech defect, or a
 significant stutter, we are unconvinced that an accent or the need for
 extra time to formulate a response are such liabilities that a due
 process violation necessarily results from not accommodating them.

Id.

 Thus, while our opinion on direct appeal articulated a different test than the

three-factor test stated in Gado, the facts supporting our finding of no abuse of

discretion essentially addressed those factors. In other words, when the factors

from Gado are applied to the evidence in this case, the result is the same: a

finding that the circuit court did not abuse its discretion in ruling that William

readily spoke and understood English and, therefore, the appointment of an

interpreter was not required to protect his constitutional rights. Because William

has failed to demonstrate a reasonable probability that, but for appellate counsel’s

failure to file a motion to transfer in the Missouri Supreme Court, the result of his

appeal would have been different, the motion court did not clearly err in denying

this claim. Point denied.5

 CONCLUSION

 The judgment is affirmed.

5
 Citing cases including Wainwright v. Torna, 455 U.S. 586, 587 (1982), and Kennedy v. State, 771
S.W.2d 852, 859 (Mo. App. 1989), the State argues that William had no constitutional right to
counsel in connection with a motion seeking discretionary review by the Missouri Supreme Court
and, therefore, cannot assert an ineffective assistance claim relating to counsel's failure to file a
motion for transfer. Given our disposition, we need not address this issue.

 10
 ___________________________________________
 LISA WHITE HARDWICK, JUDGE
ALL CONCUR.

 11