

# Missouri Court of Appeals

## Southern District

### Division One

DARREN J. WINANS,                          )
                                           )
                    Appellant,      )
                                           )
    vs.                                   )      No. SD33335
                                           )      Filed:  April 8, 2015
STATE OF MISSOURI,                         )
                                           )
                    Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

#### Honorable David C. Dally, Circuit Judge

**<u>AFFIRMED</u>**

Darren J. Winans ("Winans") appeals from the judgment of the motion court denying his amended Rule 24.035[1] motion to set aside his convictions for second-degree murder, armed criminal action, and burglary.  Because the motion court's decision to deny relief after an evidentiary hearing was not clearly erroneous, we affirm.

---

[1] Unless otherwise specified, all rule references are to Missouri Court Rules (2014).

## Factual and Procedural Background

On September 1, 2009, Winans and Matthew Laurin ("Laurin") were each charged with two counts of the class A felony of first-degree murder, in violation of section 565.020;[2] two counts of felony armed criminal action, in violation of section 571.015; and one count of the class B felony of first-degree burglary, in violation of section 569.160, following the October 11, 2008 stabbing deaths of Robert and Ellen Sheldon. The cases were later severed.

After Winans behaved erratically during booking at the Jasper County Jail, Winans was evaluated by Dr. Tammy Neil ("Dr. Neil"), a psychologist and medical provider utilized by the jail. Dr. Neil prepared a one-page report summarizing the evaluation.[3]

On January 15, 2010, the State filed a notice of aggravating circumstances and its intent to seek the death penalty against Winans. Two attorneys from the Capital Litigation Division of the Missouri State Public Defender's Office, Charlie Moreland ("Moreland") and Tom Marshall ("Marshall") (collectively "defense counsel"), entered an appearance on Winans' behalf.

The State provided defense counsel with a copy of Dr. Neil's report, and defense counsel later deposed Dr. Neil about her report. The report purportedly stated that Winans made "admissions relative to the charges in this case" to Dr. Neil. Specifically, Winans admitted he had been involved in the planning and execution of the robbery that resulted in the victims' deaths, and that he was on drugs at the time.

---

[2] All references to statutes are to RSMo 2000, unless otherwise indicated.

[3] A copy of Dr. Neil's report was entered into evidence at the evidentiary hearing; however, a copy of it was not provided to this Court. Accordingly, we recite only those facts pertaining to Dr. Neil's report we can glean from the parties' briefs and from the transcript of the evidentiary hearing.

On February 28, 2011,[4] the parties appeared before the court to announce a plea agreement as contained in a "Petition to Enter plea of Guilty" that had been explained to and signed by Winans. Defense counsel also signed the petition and affirmed they had "investigated the circumstances of this case and have explored all avenues leading to the facts relevant to guilt and degree of guilt or penalty."

As part of Winans' plea of guilty, the State agreed to file an amended information reducing the charges on the two murder counts from first-degree felony murder to second-degree felony murder; Winans would plead guilty to all the charges contained in the amended information, including the armed criminal action and the burglary charges; and Winans would receive sentences of life imprisonment on the two felony murder counts.[5] The parties also agreed that a sentencing hearing would be held during which the sentences for the remaining charges would be decided and a determination made whether the sentences imposed, including the two life sentences, would be served concurrently or consecutively.

Upon examination by the plea court, Winans stated that: (1) defense counsel had explained the charges against him, and advised him of any and all possible defenses he might have; (2) he acknowledged the rights he was waiving by pleading guilty; and (3) he believed he would not be found innocent by a jury. The plea court expressly advised Winans that he would lose the "right to file pretrial motions to suppress or try to keep certain items out of evidence" if he pleaded guilty. Winans acknowledged that right and stated he still wished to plead guilty.

In the prosecutor's recitation of the factual basis for the charges, he described a scene in which the victims' son found his parents (and the family dog) stabbed to death in their home.

---

[4] A five-day jury trial was scheduled for May 2, 2011.

[5] Winans also agreed to plead guilty to a stealing charge in another case pending against him that involved the murder victims.

Winans and Laurin went to the Old Cabin Shop—owned by victims—to steal guns. While in the shop, they heard a dog bark and Laurin ran into the residential section of the building. Thereafter, Winans stated he "heard the noises that were made inside and he knew that what happened in there was not good." Winans then went into the house, saw blood, and described it as "the awfulist [sic] thing that he had ever seen in his life[.]" Winans and Laurin took guns from the shop and left, later burning their clothes to hide evidence. Winans made statements to his girlfriend's mother admitting to the plan to go to the Old Cabin Shop to steal guns.[6] The prosecutor also mentioned Winans had made statements to Dr. Neil at the Jasper County Jail, but nothing specific was attributed to her.

The plea court found Winans' plea was voluntarily and intelligently entered and that a factual basis existed for the plea. The plea court accepted Winans' guilty plea, ordered a sentencing assessment report, and scheduled a sentencing hearing. Following the sentencing hearing, the plea court imposed sentences of life imprisonment on the second-degree murder charges, twenty years for each armed criminal action charge, and fifteen years on the burglary charge, all to be served consecutively.

On October 31, 2011, Winans filed a "Motion to Vacate, Set Aside or Correct the Judgment or Sentence," and appointed counsel later filed an amended motion. Winans alleged, in part, that defense counsel was ineffective for failing to file a motion to suppress statements he made to Dr. Neil.

At the evidentiary hearing on August 7, 2013, attorney Moreland testified he and co-counsel Marshall considered filing a motion to suppress Dr. Neil's report, but did not do so as "that was still an available option to us, should the case gone [sic] to trial." Moreland believed

---

[6] The girlfriend's mother died prior to the plea hearing, but her testimony was preserved during the preliminary hearing in this case.

they had grounds to file a motion to suppress on the basis that Dr. Neil's report was "a confidential communication with a psychologist[,]" as well as the fact that Dr. Neil was also "the medical care provider for the jail." Moreland testified that if Winans "had not pled," a motion to suppress would have been filed. Moreland stated that Dr. Neil's report was just one piece of evidence, that the risk of going to trial was that some evidence would be admitted and some not, and that this was all explained to Winans.

Attorney Marshall testified the plan was to contest Dr. Neil's testimony at trial "if it got to that point[,]" and that he and attorney Moreland had discussed the filing of a motion to suppress "early on."

Winans testified by deposition that when he met with Dr. Neil, she told him their conversation was privileged. He agreed he "admitted to stuff around the murder." Winans could not recall if defense counsel specifically discussed with him that Dr. Neil's report could be used against him at trial, but remembered they "pretty much told me all the things that can be used against me at trial." He did not remember defense counsel discussing with him filing a motion to suppress as to Dr. Neil's prospective testimony if they went to trial. Winans testified that if defense counsel had told him there was a possibility of Dr. Neil's testimony being suppressed, he would have insisted on going to trial.

On April 22, 2014, the motion court entered its "Findings of Fact, Conclusions of Law and Judgment" overruling Winans' post-conviction motion. The motion court found that Winans had made "some sort of incriminating statement" to Dr. Neil when she was serving as a mental health consultant for the jail, and that defense counsel had not filed a motion to suppress, but testified they would have done so before trial. The motion court found that it was "clear from

5

the testimony that such a motion would have been filed prior to any trial on the charge of first degree murder[,]" and that "the process was explained to [Winans.]" This appeal followed.

In his sole point on appeal, Winans contends the motion court erred in denying his Rule 24.035 motion because defense counsel failed to suppress his incriminating statements made to Dr. Neil before advising Winans to plead guilty to the charges against him.

The issue for our determination is whether the motion court clearly erred in denying Winans motion for post-conviction relief.

## Standard of Review

Appellate review of an order denying a motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law are "clearly erroneous." Rule 24.035(k); *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc 2007). The clearly erroneous standard is satisfied only if, after a review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Id.* "[T]he findings of the motion court are presumptively correct." *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

The motion court is free to believe or disbelieve any portion of the testimony, and we defer to the motion court's credibility determinations. *Betts v. State*, 876 S.W.2d 802, 806 (Mo.App. W.D. 1994). "[W]e view the record in the light most favorable to the motion court's judgment, accepting as true all evidence and inferences that support the judgment and disregarding evidence and inferences that are contrary to the judgment." *Smith v. State*, 443 S.W.3d 730, 733 (Mo.App. S.D. 2014) (internal quotation and citation omitted).

## Analysis

Winans argues that his plea counsel was ineffective in failing to file a motion to suppress incriminating statements Winans made to Dr. Neil.

6

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential[.] . . . A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Second, the defendant must show prejudice from his counsel's deficient conduct. *Id.* at 687. "To show prejudice when challenging a guilty plea, the movant must allege facts showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Davis v. State*, 435 S.W.3d 113, 116 (Mo.App. E.D. 2014) (internal quotation and citation omitted). "[F]ollowing a guilty plea, the effectiveness of counsel is relevant only to the extent that it affected whether or not the plea was made voluntarily and knowingly." *Id.* (internal quotation and citation omitted).

Here, the motion court specifically found that:

It is clear from the testimony that such a motion would have been filed prior to any trial on the charge of first degree murder. The law is clear that any complaint about failure to file a motion to suppress is waived by the voluntary entering of a plea of guilty, State v. Smith[,] 972 S.W.2d 551 [(Mo.App. S.D. 1998)]. In this case it is clear that one would have been filed if the case proceeded to trial and that the process was explained to Movant.

The motion court found that Winans was informed that if he proceeded to trial, a motion to suppress Dr. Neil's testimony would be filed, and that he was informed regarding the process associated with a suppression motion. Likewise, because Winans' plea was voluntary, his complaint about defense counsel's failure to file a motion to suppress was waived. As we have

7

reiterated since **Smith**, "[a] claim that counsel was ineffective for failing to file and pursue a motion to suppress is waived by the voluntary entry of a guilty plea." **Lynn v. State**, 417 S.W.3d 789, 804 (Mo.App. E.D. 2013) (internal quotation and citation omitted).

The motion court did not clearly err in denying post-conviction relief.  Point denied.  The judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs

8