

# Missouri Court of Appeals

## Southern District

### Division Two

JAMES L. JARRETT, )
)
    Movant-Appellant, )
)
v. ) No. SD35458
) Filed: April 17, 2019
STATE OF MISSOURI, )
)
    Respondent-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

Honorable W. Keith Currie, Special Judge

### AFFIRMED

James Jarrett (Jarrett) appeals from an order denying his amended Rule 29.15 motion to set aside his convictions for one count of forcible rape and two counts of first-degree statutory sodomy. *See* §§ 566.030, 566.062.[1] Because the motion court's decision to deny relief after an evidentiary hearing was not clearly erroneous, we affirm.

Jarrett bore the burden of proving the grounds asserted in his post-conviction motion by a preponderance of the evidence. *See* Rule 29.15(i); ***McLaughlin v. State***, 378 S.W.3d 328, 337 (Mo. banc 2012). Our review of the denial of a Rule 29.15 motion is limited to determining

---

[1] All rule references are to Missouri Court Rules (2018). All statutory references are to RSMo Cum. Supp. (2010).

whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); ***Williams v. State***, 168 S.W.3d 433, 439 (Mo. banc 2005). We will find clear error only if a full review of the record leaves us with a definite and firm impression that a mistake has been made. ***Zink v. State***, 278 S.W.3d 170, 175 (Mo. banc 2009). We presume the motion court's findings and conclusions are correct. ***McLaughlin***, 378 S.W.3d at 336-37. "The motion court is not required to believe the testimony of the movant or any other witness, even if uncontradicted, and this Court defers to the motion court's determination of credibility." ***Smith v. State***, 413 S.W.3d 709, 715 (Mo. App. 2013). The following summary of facts has been prepared in accordance with these principles.

Jarrett was charged with the following offenses committed in 2010 against three of his adopted children: forcible rape of his 17-year-old daughter, H.J. (Count 1); first-degree statutory sodomy of his 13-year-old daughter, T.J. (Count 2); and first-degree statutory sodomy of his 12-year-old son, M.J. (Count 3). Following a jury trial in February 2014, Jarrett was found guilty on all three counts. The trial court imposed the jury-recommended sentences of 25 years on each count, with the sentences on Counts 1 and 2 running concurrently and the sentence on Count 3 running consecutively to the other sentences. This Court affirmed Jarrett's convictions and sentences on direct appeal in an unpublished order and statement. ***State v. Jarrett***, SD33266 (Mo. App. October 6, 2015).

Jarrett filed a *pro se* motion seeking relief pursuant to Rule 29.15. Thereafter, appointed counsel filed an amended motion.[2] In the amended motion, Jarrett claimed that his trial counsel was ineffective in three respects and his appellate counsel was ineffective in one respect. The

---

[2] This Court has independently verified the timeliness of Jarrett's post-conviction motions. *See **Moore v. State***, 458 S.W.3d 822, 825-26 (Mo. banc 2015); ***Dorris v. State***, 360 S.W.3d 260, 268 (Mo. banc 2012).

motion alleged: (1) trial counsel was ineffective for failing to call Jarrett's older daughter, H.E., as a witness; (2) trial counsel was ineffective for failing to object to each of the verdict-directing instructions on the ground that they failed to identify the specific incident upon which the jurors were required to agree and, therefore, violated Jarrett's right to a unanimous verdict; (3) appellate counsel was ineffective for failing to raise a plain-error point challenging the verdict-directing instructions on the same ground; and (4) trial counsel was ineffective for failing to object to T.J.'s testimony about different sexual acts Jarrett forced her to engage in other than the act charged.

In November 2017, the motion court held an evidentiary hearing at which Jarrett and his trial counsel, Daren Todd (Todd), testified. Jarrett's appellate counsel, Margaret Johnston (Johnston) testified via deposition. Thereafter, the motion court issued findings of fact and conclusions of law denying Jarrett's amended motion for post-conviction relief. This appeal followed.

**Standard of Review**

All of Jarrett's points on appeal involve alleged ineffective assistance of counsel. Because those allegations involve both trial and appellate counsel, we will set out the applicable standard of review for each type of claim.

Jarrett's first, second and fourth points contend he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, the movant must satisfy a two-prong test. *Zink*, 278 S.W.3d at 175. First, the movant must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

3

time." *Id*. at 689. Second, the movant must show that trial counsel's failure prejudiced him. *Id*. at 687; *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006) (to satisfy the prejudice prong under the *Strickland* test, movant is required to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Both of these prongs must be shown in order to prove ineffective assistance of counsel. *Zink*, 278 S.W.3d at 175. Movant must overcome a strong presumption that counsel's conduct was reasonable and effective. *Id*. at 176.

Jarrett's third point contends he received ineffective assistance of appellate counsel. The standard for evaluating a claim of ineffective assistance of appellate counsel is the same as the standard for evaluating a claim of ineffective assistance of trial counsel. *Richardson v. State*, 386 S.W.3d 803, 806 (Mo. App. 2012). That is, a movant must prove his appellate counsel's performance fell below an objective standard of reasonableness and that his defense was prejudiced by that unreasonable performance. *Baumruk v. State*, 364 S.W.3d 518, 525 (Mo. banc 2012). Similarly, appellate counsel's performance is "presumed reasonable." *Id*. at 526. To overcome that presumption, "the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Tisius v. State*, 183 S.W.3d 207, 215 (Mo. banc 2006). "The claimed error must have been sufficiently serious to create a reasonable probability that, if it was raised, the outcome of the appeal would have been different." *Id*.; *Meiners v. State*, 540 S.W.3d 832, 842 (Mo. banc 2018).

**Discussion and Decision**

Presenting four points on appeal, Jarrett contends the motion court clearly erred in denying each of the four claims alleged in his amended Rule 29.15 motion for post-conviction relief. Jarrett asserts that he received ineffective assistance of trial counsel for failing to call a

4

witness (Point 1) and failing to object to certain testimony (Point 4). In addition, Jarrett also asserts that both trial and appellate counsel, respectively, were ineffective for failing to object to verdict-directing instructions at trial (Point 2) and failing to raise a plain-error point addressing that issue on appeal (Point 3). For ease of analysis, we discuss these points in the order outlined above. Additional facts will be included below as we discuss each point on appeal.

*Points 1 and 4*

Point 1 contends trial counsel was ineffective for failure to call Jarrett's oldest daughter, H.E., to refute T.J.'s testimony at trial that the first time Jarrett sexually abused her was on Halloween night in 2005 when she was eight years old. At trial, Jarrett testified that he never kept T.J. from going trick-or-treating. In the amended motion for post-conviction relief, Jarrett alleged that trial counsel was ineffective for failing to call H.E., who would have corroborated Jarrett's testimony. At the evidentiary hearing, trial counsel Todd was asked why he did not call H.E. Todd testified that he chose not to call H.E. to avoid the possibility of the State calling Jarrett's son, E.J., and Jarrett's former wife as rebuttal witnesses, both of whom potentially could have given testimony that might damage the defense:

> When I was speaking with [Jarrett], I was concerned that the State would call his son, [E.J.], as a rebuttal witness. [Jarrett] indicated he and [E.J.] didn't have a very good relationship, and I was concerned about that. In addition, I was also concerned about his wife at the time … also rebutting that presumption or that statement. I didn't want to muddle up the record with who are we going to believe more, the mother or the daughter. As I explained to [Jarrett], the whole case was going to depend on whether they believed him or they didn't believe him. So that was my strategy.

Jarrett testified at the evidentiary hearing that Todd explained this strategy to him, but he asked Todd to call H.E. anyway. H.E. testified that she was available to testify. The motion court rejected the claim because, *inter alia*, Todd was aware of H.E. and had interviewed her, but it was his reasonable trial strategy to not call her as a witness.

5

Jarrett's first point maintains that the motion court clearly erred because H.E.'s testimony "was necessary to provide [Jarrett] with a viable defense[,]" and "[b]ut for trial counsel's error, there is a reasonable probability the outcome of [the] trial would have been different." According to Jarrett, "counsel's strategy not to call [H.E.] was unreasonable under the circumstances[.]" We disagree.

"Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson*, 196 S.W.3d at 33. Further, "[t]he selection of witnesses and evidence are matters of trial strategy, *virtually unchallengable* in an ineffective assistance claim." *Williams*, 168 S.W.3d at 443 (emphasis added); *see also* *Strickland*, 466 U.S. at 690 ("strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Here, the record shows that Todd had investigated H.E. as a witness and, after further consideration, reasonably decided not to call her at trial because he was afraid that the State might call Jarrett's son and former wife as rebuttal witnesses, whom he believed would harm the defense.

Moreover, the first-degree statutory sodomy charge against T.J. was alleged to have occurred five years later in 2010. H.E.'s alleged testimony concerning whether T.J. went trick-or-treating years earlier would have only served to impeach T.J.'s statement about the exact date Jarrett's sexual abuse against her first began – a collateral matter. Counsel could have reasonably decided that the opportunity to present impeachment evidence on this collateral issue was outweighed by other strategic considerations. *See* *State v. Twenter*, 818 S.W.2d 628, 643 (Mo. banc 1991) ("[o]rdinarily, a defendant is not entitled to relief merely because defense counsel elects not to present evidence of dubious impeachment value"); *see also* *Tucker v. State*, 468 S.W.3d 468, 474 (Mo. App. 2015) ("decision whether to impeach a witness is

6

presumed to be a matter of trial strategy"). Because Jarrett has failed to overcome the strong presumption that Todd's conduct was reasonable and effective, Point 1 is denied.

Point 4 contends trial counsel was ineffective for failing to object when T.J. testified about other uncharged acts of sexual abuse Jarrett committed against her. Jarrett was charged with committing first-degree statutory sodomy against T.J. when he knowingly touched T.J.'s genitals with his hand. In Jarrett's amended motion, he alleged that trial counsel was ineffective for failing to object when the prosecutor asked T.J. whether Jarrett "ever tried to put his penis in her vagina and other places besides her vagina" and for asking T.J. on recross-examination whether Jarrett "ever touched her breasts" or "ever tried to make her put his penis in [her] mouth." Jarrett further alleged that by "failing to object and for asking these questions, trial counsel allowed uncharged crimes and prior bad acts evidence to be presented against him."

At the evidentiary hearing, Todd testified that there were three reasons for not objecting to this testimony: (1) to avoid signaling to the jury that the defense was concerned about T.J.'s testimony; (2) to move the case along by getting T.J., who was visibly distraught, off the witness stand as soon as possible; and (3) because Todd did not think the judge would sustain the objection. The motion court credited Todd's testimony as reasonable trial strategy and denied the claim. The court specifically found that it was "Todd's trial strategy to not object to the line of questioning to prevent highlighting the additional alleged incidents, to conclude an unfavorable witness, and to focus on Mr. Jarrett's own testimony."

Jarrett's fourth point posits clear error in denying the claim because "[a] reasonably competent trial counsel" would have objected to questions that would lead to the admission of uncharged crimes, which deprived Jarrett of a fair trial. According to Jarrett, "[b]ut for trial counsel's error, there is a reasonable probability the outcome of [Jarrett's] trial would have been different." We disagree.

7

Here, Jarrett has again failed to demonstrate that trial counsel's failure to object was unreasonable trial strategy. It is well recognized that even seasoned trial attorneys will oftentimes not object to otherwise improper questions or arguments because it is feared that frequent objections "highlight the statements complained of, resulting in more harm than good." *Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014) (citation omitted); *see Marshall v. State*, 567 S.W.3d 283, 293 (Mo. App. 2019) (merely because trial counsel failed to object to everything objectionable does not equate to incompetence or ineffective assistance of counsel). In addition, Jarrett failed to prove that he was prejudiced, because any objection to the prosecutor's questions on the ground that they sought to elicit evidence of other crimes would not have been meritorious. "Numerous cases in Missouri involving sexual crimes against a child have held that prior sexual conduct by a defendant toward the victim is admissible as it tends to establish a motive, that is satisfaction of defendant's sexual desire for the victim." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (internal quotation marks omitted); *see also State v. Evans*, 490 S.W.3d 377, 383 n.2 (Mo. App. 2016). Thus, because Jarrett's uncharged sexual conduct toward T.J. was admissible, any objection would not have been meritorious. Trial counsel is not ineffective for failing to make a non-meritorious objection. *Zink*, 278 S.W.3d at 188; *Marshall*, 567 S.W.3d at 292; *see also Anderson v. State*, 564 S.W.3d 592, 615 (Mo. banc 2018). Accordingly, Point 4 is denied.

*Points 2 and 3*

In Points 2 and 3, Jarrett recognizes that the underlying criminal case was a "multiple acts case," in which there was "evidence of multiple, separate incidents of forcible rape and statutory sodomy[.]" In each point, Jarrett asserts that "the verdict directors failed to differentiate between the various sexual encounters in a way that ensured the jury unanimously convicted [Jarrett] of the same act or acts" as required in *State v. Celis-Garcia*, 344 S.W.3d 150

8

(Mo. banc 2011). Our Supreme Court in **Celis-Garcia** suggested two ways to address the unanimity problem in cases regarding multiple acts:

> [A] defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.

*Id*. at 157. Distinguishing between the offenses is of crucial importance. **Hoeber v. State**, 488 S.W.3d 648, 658 (Mo. banc 2016). "[T]he separate offenses could be distinguished on the basis of time or other characteristics besides the place in which the offense occurred." **Id**.; *see also* **Sanders v. State**, 564 S.W.3d 380, 383-84 (Mo. App. 2018) (noting that the determination of **Strickland** prejudice with respect to ineffective-assistance-of-counsel claims concerning jury unanimity is case-specific and dependent on the factual circumstances of each case). With that background review completed, the following additional facts are relevant to these two points on appeal.

H.J. told a forensic interviewer that she was raped by Jarrett. H.J. said that the last time Jarrett sexually abused her was Thursday, May 6, 2010. On that date, Jarrett made her get on the floor on her hands and knees and then Jarrett put "his dick" in her "pussy" and then pulled it out and ejaculated into a paper towel. She said that Jarrett had done this "a lot," perhaps multiple times per week, in various different rooms in their house and at various locations when she was with Jarrett in his truck. H.J. also told a sheriff's deputy that the last time Jarrett raped her was on May 6, 2010.

The verdict-directing instruction for Count 1 (forcible rape) required the jury to find that Jarrett had sexual intercourse by the use of forcible compulsion with H.J. "on or about May 6, 2010[.]" During closing argument, the prosecutor focused the jury's attention on the verdict-

9

directing instruction for Count 1 and the incident of forcible rape to which H.J. was subjected by Jarrett on May 6, 2010.

At trial, T.J. testified that Jarrett put his hands in T.J.'s pants and rubbed her "panties." After the first time this occurred on Halloween, Jarrett would touch her like this weekly. Although she could not remember precisely when Jarrett last touched her, she testified that it was about two weeks before H.J. disclosed to their mother (Mother) that Jarrett was abusing her. T.J. testified that the last incident occurred in Jarrett's bedroom after everyone else had left the house. She said that she was folding laundry when Jarrett made her go to his room, where Jarrett began touching her vagina with his penis and his hand. T.J. also told a forensic examiner that the last time Jarrett touched her in this way was a couple of weeks before the forensic interview. A sheriff's deputy similarly testified that T.J. said the last time Jarrett sexually abused her was about two weeks before their interview, which occurred on May 9, 2010. T.J. told the deputy that Jarrett rubbed his penis on her vagina and also touched her vagina with his hand. She told the deputy that Jarrett had done this to her numerous times before then.

The verdict-directing instruction for Count 2 (first-degree statutory sodomy) required the jury to find that Jarrett touched T.J.'s genitals with his hand "on or between April 15 and May 1, 2010[.]" Mother testified that, on the way to spend Mother's Day with her mother in 2010, H.J. and T.J. disclosed that Jarrett had been sexually abusing them. The prosecutor argued to the jury that T.J. had testified about Jarrett rubbing her genitals approximately two weeks before she gave a statement to police on May 9, 2010.

M.J. testified that in November 2010, while at Jarrett's house, Jarrett stuck his penis in M.J.'s "butt." M.J. said that Jarrett sexually abused him in the same manner a few other times after this incident. M.J. also told the forensic examiner that Jarrett "raped" him in this way

10

more than once at Jarrett's house.  M.J. said the last time Jarrett did this to him was on the day he told Mother about the abuse.  Mother testified that, in early December 2010, M.J. disclosed to her that Jarrett was sexually abusing him.

The verdict-directing instruction for Count 3 (first-degree statutory sodomy) required the jury to find that Jarrett placed his penis in M.J.'s anus "on or between November 7 and December 1, 2010."

At trial, Jarrett's counsel objected to the verdict-directing instruction for Count 2 only on the ground that the time frame alleged was different than that alleged in the charging document.  No objection was made to the verdict-directing instructions on jury-unanimity grounds.

At the post-conviction evidentiary hearing, Todd testified that he did not have a trial strategy for not objecting to the verdict directors for lack of specificity because he did not believe Jarrett was guilty of any offense.  Counsel also said that the defense theory at trial was that Jarrett had not committed the charged offenses.

Appellate counsel Johnston testified that the verdict-directing instruction pertaining to H.J. alleged a specific date – May 6, 2010 – on which the forcible rape had occurred.  According to Johnston, this required the jury to unanimously agree that a specific incident of forcible rape committed against H.J. occurred on that particular date.  She said this specificity led her to not to raise a jury-unanimity claim on appeal with respect to Count 1 involving H.J.

Johnston testified that the same was true for the allegations involving T.J.  Even though there was evidence that Jarrett engaged in multiple acts of sexual abuse with T.J., there was enough specificity for jury unanimity when T.J. testified the last time Jarrett abused her was when she was folding laundry.  Counsel did not "see a jury unanimity problem" with the verdict-directing instruction involving T.J.

11

With respect to M.J., Johnston testified that she did not raise a jury-unanimity claim because the evidence showed that Jarrett committed the same act multiple times against M.J. without any additional specificity to distinguish one act from another.[3]  Moreover, she noted that the prosecutor told jurors that the instruction was focused on the last time this occurred to M.J.  Johnston believed that this was specific enough not to implicate a jury-unanimity issue.

The motion court found that appellate counsel's explanation regarding why she chose not to pursue a jury-unanimity claim on direct appeal constituted reasonable strategy. The court agreed with appellate counsel that, with respect to each victim, the prosecutor directed the jurors to a specific incident occurring within the limited time frame contained in the verdict-directing instructions.  Consequently, the defense trial strategy of "absolute denial" coupled with the

---

[3]  In *Celis-Garcia*, our Supreme Court recognized that a case in which a victim reported repeated, identical acts of sexual abuse occurring in the same location might suggest a different result:

> The state argues that requiring the state to differentiate between multiple acts would make it impossible to prosecute sexual abuse cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts. The case hypothesized by the state was not the one presented here because both [victims] provided details of multiple sexual acts that were committed at different times and in different locations.

*Id*. at 157 n.8.  In **State v. Watson**, 407 S.W.3d 180 (Mo. App. 2013), the eastern district of this Court cited this footnote and held that **Celis-Garcia** did not control a case in which repeated identical acts of statutory rape occurred in the same location. *Id*. at 185; *see* **State v. Walker**, 549 S.W.3d 7, 12 (Mo. App. 2018) (western district similarly concluded that "factual restrictions contained in [the] verdict director" precluded any "further basis upon which the jurors could possibly distinguish one act of statutory rape from another" and held that "[b]ecause the jurors had no evidentiary basis upon which to differentiate between…repeated acts, [defendant's] right to a unanimous verdict was not at risk of being violated"); *see also* **State v. Armstrong**, 560 S.W.3d 563, 572-74 (Mo. App. 2018) (eastern district again holding that defendant's right to a unanimous verdict was not violated "because there was absolutely no evidentiary basis upon which the jurors could possibly differentiate between the repeated, identical acts that fell within each verdict director"); **State v. Dutcher**, --- S.W.3d ----, 2019 WL 1323957, at *2 (Mo. App. S.D. Mar. 25, 2019) (same holding).

limited time frame of the verdict directors pointing to one specific incident did not misdirect the jury in a way that affected the verdict. Based on these findings, the motion court rejected Jarrett's claims of ineffective assistance of both trial and appellate counsel.

In Points 2 and 3, Jarrett maintains the motion court clearly erred in refusing to find ineffective assistance of counsel. Jarrett insists trial counsel should have objected to the verdict directors on unanimity grounds, and appellate counsel "should have raised this meritorious issue on appeal." We disagree.

Jarrett's claims are without merit because he failed to prove appellate counsel's actions were anything other than reasonable strategy. "Appellate counsel is not ineffective for failing to raise every non-frivolous claim on appeal but may use his professional judgment to focus on the most important issues." *Barnes v. State*, 334 S.W.3d 717, 723 (Mo. App. 2011); *see Baumruk*, 364 S.W.3d at 539 ("no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments"). Further, counsel will not be found ineffective for deciding not to raise a non-meritorious claim. *Royer v. State*, 421 S.W.3d 486, 490 (Mo. App. 2013). "In fact, a post-conviction movant fails to prove counsel's performance is deficient when appellate counsel testifies he or she did not raise a particular issue because he or she believed it would be without merit." *Id*.; *see, e.g.*, *Storey v. State*, 175 S.W.3d 116, 149 (Mo. banc 2005) (reasonable decision of appellate strategy to not raise the issue on appeal "is not a ground for ineffective assistance of counsel"). Here, Johnson explained in detail why she did not think a point on appeal regarding jury unanimity would have been meritorious, and the motion court agreed, finding her strategy reasonable. Consequently, Jarrett failed to overcome the heavy burden of proving counsel's performance was deficient. *See Storey*, 175 S.W.3d at 149; *Royer*, 421 S.W.3d at 490. Further, "appellate

counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim." ***Joyner v. State***, 421 S.W.3d 580, 582 (Mo. App. 2014).

Appellate counsel's testimony on this issue also supports the trial court's ruling that trial counsel was not required to assert a unanimity objection to the verdict-directing instructions. Just like appellate counsel, trial counsel here is not ineffective for failing to make a non-meritorious objection. ***Zink***, 278 S.W.3d at 188. Thus, the motion court did not clearly err in denying Jarrett's related claims concerning trial and appellate counsel. Accordingly, Points 2 and 3 are denied.

**Conclusion**

After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. *See* Rule 29.15(k); ***Williams***, 168 S.W.3d at 439. The motion court's order denying Jarrett's amended Rule 29.15 motion is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR