

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

**ANDREW SHORES,**
            **Appellant,**

                                                **WD85314**

**v.**

                                                **OPINION FILED:**
                                                **June 27, 2023**

**STATE OF MISSOURI,**
            **Respondent.**

### Appeal from the Circuit Court of Bates County, Missouri
### The Honorable M. Brandon Baker, Judge

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Cynthia L. Martin and W. Douglas Thomson, Judges

Andrew Shores appeals the denial, following an evidentiary hearing, of his

Rule 29.15[1] motion for post-conviction relief. He raises four points on appeal. He

argues the motion court clearly erred in denying his motion because counsel was

ineffective in that counsel (a) failed to sufficiently impeach two witnesses using their

prior inconsistent statements (Point I), (b) failed to challenge the court's finding that he is

a predatory sexual offender both at trial (Point II) and on appeal (Point III), and (c) failed

---

[1] All Rule references are to the Missouri Supreme Court Rules (2019), because
Shores was sentenced before January 1, 2018, and he initially filed his motion for
post-conviction relief on May 16, 2019. *See* Rule 29.15(m).

to move to amend Count XIII after the State indicated that it had not met its burden of proof on that count (Point IV). Finding no error, we affirm.

## Background[2]

In 2009, Victim lived with her mother, sister, brother, and Shores, who was Victim's stepfather. In 2012, Sister alleged Shores was sexually abusing her; Sister also alleged that Shores was sexually abusing Victim. At that time, Victim denied Sister's allegations and accused Sister of lying, because Victim did not want to break up the family. Based on Sister's allegations, Shores was charged, in Case No. 12BS-CR00881-01 (Sister's case), with three counts of the class B felony of first-degree child molestation related to events occurring in 2010, 2011, and 2010-12. Pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), Shores entered a guilty plea to those charges on March 6, 2015.[3] The court sentenced him to seven years' imprisonment on each count, with the sentences to run concurrently, but suspended execution of the sentences and imposed five years' probation.

In 2015, Mother told Shores that she wanted a divorce. When Victim learned that the family would no longer be together, Victim disclosed to Mother that Shores had

---

[2]"We view the record in the light most favorable to the motion court's judgment, accepting as true all evidence and inferences that support the judgment and disregarding evidence and inferences that are contrary to the judgment." *Oliphant v. State*, 525 S.W.3d 572, 577 (Mo. App. S.D. 2017) (quoting *Winans v. State*, 456 S.W.3d 912, 916 (Mo. App. S.D. 2015)).

[3]"Under *North Carolina v. Alford*, a defendant may enter what is, in effect, a guilty plea, even though the defendant protests that he or she is innocent of the crime charged." *Nguyen v. State*, 184 S.W.3d 149, 152 (Mo. App. W.D. 2006) (citation omitted). "[I]n reviewing a motion for post-conviction relief filed pursuant to Rule [29.15], an *Alford* plea is not treated differently from a guilty plea.

sexually abused her, just as Sister had said. Following Victim's disclosure, the State charged Shores with seven counts of first-degree statutory rape and seven counts of child endangerment related to events occurring from 2009 through 2012.[4] The State alleged Shores was a predatory sexual offender under section 558.018[5] "in that on or about March 2015, [Shores] pleaded guilty to the class B felony of child molestation in the first degree" in Sister's case.

Shores waived his right to a jury trial, and the matter proceeded to a bench trial. Following opening statements, the State offered Exhibit 1, certified court records from Sister's case. The records were admitted into evidence without objection. Victim testified that Shores raped her three to four times a month for four years, but she could remember only some of the instances in detail. "It would happen three to four times a month. It's just–I just can't remember–I just can't remember all the times he used to–I built a wall and I would put it behind the wall." The assaults typically occurred in the bedroom Victim shared with Sister, though there were some exceptions.

---

[4] Specifically, the second amended information charged Shores with two counts of the unclassified felony of first-degree statutory rape for knowingly having sexual intercourse with Victim, a child less than twelve years old; five counts of the unclassified felony of first-degree statutory rape for knowingly having sexual intercourse with Victim, a child less than fourteen years old; seven counts of the class C felony of first-degree endangering the welfare of a child for knowingly acting in a manner that created a substantial risk to Victim's health, by having sexual intercourse with her; and the class D felony of driving while revoked. The court granted Shores's motion for judgment of acquittal as to the driving-while-revoked charge.

[5] All references to section 558.018 are to the version of the statute in effect from 2006 to 2013. In 2017, the predatory sexual offender provisions were moved to section 566.125.

The first incident Victim could recall occurred in Rich Hill, Missouri, at the beginning of the 2009 school year when Victim was ten years old. Victim and Sister got in trouble and, after Mother left for work, Shores called the girls down to the bedroom he shared with Mother. He made Sister undress, and then he removed his shorts. Shores started kissing Sister and had sexual intercourse with her while making Victim watch. Then he called Victim over and made Sister go stand where Victim had been standing. Victim testified,

> He started kissing me and then he would lay me down on the bed and after he had his short[s] off, because they were already off because of [S]ister, he would stick his penis–try to stick [it] in me, but I was little so obviously it didn't go in. And after he was done he would ejaculate, I guess, on my stomach is how you would say it.

Shores's penis entered Victim's vagina, "but not completely."

The second incident Victim could remember happened in spring 2010 when she elected to study rather than do chores. After Mother left for work, Shores went upstairs to the girls' bedroom and told them they were in trouble for deciding that school was more important than housework. Victim testified,

> [Shores] came over to me first and he had me take off my PJs, which I had worn [a] nightgown. And then he had taken off his short[s] and he started kissing me and then he penetrated me and then he ejaculated on my stomach and then he took his shorts and wiped himself off and he went over to my sister and I just rolled over clamped my eyes shut and started crying. A lot of it was so I wouldn't know what was going on [on] the other side of the room.

Victim testified that Shores raped her again in 2010, but she could not recall the details of any particular incident.

The third incident Victim recalled occurred in late May or early June 2011 by the family's pool. Shores called Victim outside to talk while Mother was at work and Sister and Brother were in bed. He took off his shorts, told Victim to take off her pajamas, and had sexual intercourse with her on the ground. The fourth incident happened in fall 2011. Mother was working a day shift to help make ends meet. Victim and Sister were helping Shores build smokers in the family's garage. He took a lunch break and, afterwards, he did "the same thing as normal" to both girls.

The fifth incident took place in winter 2011. Victim testified that "[n]ormally[, she] would try and fi[ght] a little bit, but this time [her] arms were so dead from having to carry in wood for the wood stove" that she "couldn't move." Shores went up to the girls' bedroom that evening, told them he was proud of them, and then proceeded to have sexual intercourse with them.

The last incident Victim recalled occurred in October 2012 around the time Sister left home. Victim recalled that it was one of the last times Shores had sexual intercourse with her "because [Sister] had said it happened to her and she got removed from the house. So, it would have been one of the very last few times it happened."

Victim and Sister never talked about the abuse "because if [they] talked about it, then it would be real. But if [they] didn't talk about it, then [they] could just pretend like it didn't happen." Victim testified that Shores told her that, if she told anyone what he was doing to her, her family would be ripped apart and she would not see Mother or her siblings. Victim also testified that, when Sister told Mother in 2012 about the abuse, Mother took Sister to the hospital and then Victim did not see Sister again for a very long

5

time. When first confronted with Sister's allegations, Victim claimed Shores did not abuse her because she "grew up without [her] real dad and [she] wasn't going to let that happen to [Brother]."

Sister testified that, in 2012, she disclosed that Shores was sexually abusing her and Victim. The first instance Sister could recall that involved Victim happened in 2009 in Mother's bedroom while Mother was at work. Shores told Sister and Victim that they were in trouble and that they needed to be punished. Shores then raped Victim on the bed while making Sister watch. When Shores finished with Victim, he put Sister on the bed and raped her.

Sister further testified that Shores sexually assaulted her and Victim "multiple times," that "it happened so many times," including in the girls' bedroom, and that it happened "[a]t least every two months or more." When Shores raped Victim in the girls' bedroom, "[Sister] heard him do it, but [she] would turn and act like [she] was asleep so maybe he would stop." Both Victim and Sister testified that they would have some warning that Shores was going to rape them when he told them, "Make sure you take a shower and you're clean."

The court found Shores guilty on all counts. Shores filed a motion for new trial claiming insufficient evidence of guilt beyond a reasonable doubt, which was denied. At sentencing, the court found Shores to be a predatory sexual offender, "based upon . . . [Sister's case], . . . for which . . . Defendant had previously pled guilty to and been found guilty of the Class B felony of child molestation in the first degree on March 6th of 2015." The court then sentenced him to life imprisonment, without the possibility of

6

parole for twenty years, on each statutory rape count and seven years' imprisonment on each count of child endangerment, with the sentences to be served concurrently.[6] We affirmed Shores's convictions on direct appeal. *State v. Shores*, 570 S.W.3d 633 (Mo. App. W.D. 2019).

Shores's timely filed amended motion for post-conviction relief raised four claims. In claim 8/9(a), Shores alleged trial counsel provided ineffective assistance by failing to sufficiently impeach Victim and Sister with their prior inconsistent statements. Claim 8/9(b) asserted trial counsel provided ineffective assistance by failing to object to the court's finding that Shores is a predatory sexual offender. Claim 8/9(c) alleged appellate counsel provided ineffective assistance by failing to appeal the court's predatory sexual offender finding. And, in claim 8/9(d), Shores contended trial counsel provided ineffective assistance by failing to move to amend Count XIII to second-degree statutory rape after the State conceded, during closing arguments, that it had not proved first-degree statutory rape. Following an evidentiary hearing, at which both trial counsel and appellate counsel testified, the motion court denied all four claims.

This appeal follows. Additional facts will be provided in the analysis, as necessary, to address Shores's claims.

---

[6] The court also revoked Shores's probation in Sister's case and ordered him to serve the previously imposed sentence of seven years on each of the three counts in that case to be served concurrently with each other but consecutively with the sentences imposed in Victim's case.

## Standard of Review

"Our review of the motion court's denial of a Rule 29.15 post-conviction motion is 'limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous.'" *Reed v. State*, 649 S.W.3d 86, 89 (Mo. App. W.D. 2022) (quoting *Shaw v. State*, 636 S.W.3d 596, 599 (Mo. App. W.D. 2021)). "A judgment is clearly erroneous when, in light of the entire record, [we are] left with the definite and firm impression that a mistake has been made." *Id.* (quoting *Shaw*, 636 S.W.3d at 599).

## Analysis

On appeal, Shores raises four claims of ineffective assistance of counsel. "To demonstrate ineffective assistance of counsel, a movant must prove, by a preponderance of the evidence, that '(1) . . . counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation; and (2) [movant] . . . was prejudiced by that failure.'" *Id.* (quoting *Shaw*, 636 S.W.3d at 600). "The performance prong 'requires the movant to overcome the strong presumption that . . . counsel's actions were reasonable and effective.'" *Id.* (quoting *Shaw*, 636 S.W.3d at 600). "The prejudice prong 'requires the movant to establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Shaw*, 636 S.W.3d at 600)). "If a movant fails to prove either prong, 'we need not address the other.'" *Id.* (quoting *Shaw*, 636 S.W.3d at 600).

**I.    Shores failed to prove trial counsel was ineffective in not impeaching Victim and Sister with their prior inconsistent statements (Point I).**

In his first point, Shores argues trial counsel was ineffective for failing to sufficiently impeach Victim and Sister using their prior inconsistent statements. The motion court rejected Shores's argument, finding that counsel did cross-examine Victim and Sister about some prior inconsistent statements, "but decided not to dwell on all inconsistencies" because counsel believed he had elicited enough inconsistent testimony to call Victim's credibility into question. The court concluded trial counsel's actions were reasonable and did not constitute deficient performance or create prejudice.

"In virtually every case, the extent of cross-examination must be left to the judgment of counsel." *White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997). "In cross-examining a witness, trial counsel must decide as a matter of trial strategy the most effective manner in which to present impeachment evidence." *King v. State*, 505 S.W.3d 419, 425 (Mo. App. E.D. 2016). "Many inconsistent statements are so insignificant as to be meaningless and others are so easily explainable as to not justify being presented at trial." *White*, 939 S.W.2d at 897. "Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017).

At the evidentiary hearing, trial counsel testified that the primary defense was lack of credibility of Victim and Sister, and his trial strategy was to focus on the contradiction in the most relevant parts of their testimony. Trial counsel testified,

9

> part of my thinking, part of my trial strategy was, I don't need to point out every inconsistency to Judge Journey because he's been doing this long enough, he's going to get it. He's going to know after the fifth, sixth, eighth, tenth inconsistency that I pointed out, he's going to know that direction where I'm going, that this gal has no credibility. That was a big part of my trial strategy.

He explained, "Some of the inconsistencies, frankly weren't relevant to the elements of the charges. . . . [Y]ou have to focus your energy and your efforts on the things that are–will actually matter, will actually score some points for you in a trial." Trial counsel also testified, "Maybe I didn't hit every single contradictory statement but, from my memory, I had a pretty vigorous cross-examination of [Victim]."

Trial counsel's cross-examination focused on the following inconsistencies (1) Victim's denial in 2012 that Shores had abused either girl; (2) Victim's 2015 statement to a forensic interviewer that Shores first raped her in Cole Camp, Missouri, when she was six years old, which conflicted with her trial testimony that the first incident occurred in Rich Hill, Missouri, when Victim was ten; (3) Victim's 2016 deposition testimony that the second incident occurred just a week after the first incident, which conflicted with her trial testimony that several months passed between the two incidents; (4) Victim's deposition testimony that Shores never sexually assaulted her during the summer of 2011, which conflicted with her trial testimony regarding the incident by the pool; (5) the fact that Victim had never mentioned Shores assaulting her in the garage until trial;[7] (6) Sister's denial at one point that she was being abused by Shores; and (7) Sister's

---

[7] When asked to explain the discrepancies, Victim stated, "[I]t happened three to four times a month over a span of my entire childhood, and you cannot expect me to recall ever[y] single time my dad had raped me."

conflicting statements about which girl Shores assaulted first and whether the abuse occurred in the girls' bedroom or the parents' bedroom. These issues went directly to the witnesses' credibility about Shores's abuse of Victim. Thus, by focusing his cross-examination on these issues, trial counsel effectively presented his impeachment evidence consistent with his articulated trial strategy.

On appeal, Shores identifies several inconsistencies that he believes were not adequately exploited by trial counsel to further undermine the credibility of Victim and Sister. In Shores's estimation, the most significant inconsistency related to Victim's statements in her 2016 deposition that Shores abused only her and not Sister. But the present case relates to Shores's abuse of Victim only, so abuse of Sister was not the primary focus at trial. And, if counsel had pressed Victim, she probably would have reiterated her trial testimony that Shores abused Sister, and such testimony could have further harmed Shores's defense in Victim's case.

Shores also points to Victim's testimony that the incident in the garage occurred during the day, noting that she had previously stated that Shores never abused her during the day. But that inconsistency pertains to only one of many claims of abuse. The other inconsistencies Shores identifies include whether Shores ejaculated on Victim's stomach or a towel (which could both be true), whether Shores made Victim watch a specific pornographic movie, whether Shores gave each girl a purse, and whether the abuse generally or always occurred in the girls' bedroom. Declining to impeach on these details was reasonable because these inconsistencies are "so insignificant as to be meaningless [or] are . . . easily explainable." *White*, 939 S.W.2d at 897. Shores's "argument that

11

counsel should have presented additional impeachment evidence amounts to nothing more than second-guessing counsel's methods for carrying out [his] reasonable trial strategy simply because his defense was ultimately unsuccessful." *Payne v. State*, 509 S.W.3d 830, 837 (Mo. App. W.D. 2016).

The motion court did not clearly err in finding that Shores failed to carry his burden on the performance prong of his ineffective assistance of counsel claim. Because Shores failed to carry that burden, we need not address the prejudice prong of his claim. *Reed*, 649 S.W.3d at 89.

Point I is denied.

**II.     Shores failed to prove that either trial or appellate counsel was ineffective for not challenging the trial court's finding that Shores is a predatory sexual offender (Points II and III).**

In Point II, Shores asserts trial counsel was ineffective for failing to object to the court's finding that he is a predatory sexual offender, which enhanced the sentence the trial court imposed. In Point III, Shores claims appellate counsel was ineffective for failing to appeal the court's predatory sexual offender determination. Both points on appeal depend on a construction of the predatory sexual offender statute that would require the guilty plea relied on to make the predatory sexual offender determination to predate the acts giving rise to the current offenses. Because Shore's guilty plea in Sister's case did not predate the acts committed by Shores giving rise to the charges in Victim's case, Shores argues that it was legally erroneous to enhance his sentences based on predatory sexual offender status.

"Applied to claims of ineffective assistance of counsel at sentencing, a movant must show that but for sentencing counsel's errors . . . the result of the sentencing would have been different, specifically, that his sentence would have been lower." *Jackson v. State*, 647 S.W.3d 881, 888 (Mo. App. W.D. 2022) (quoting *Jones v. State*, 541 S.W.3d 694, 697 (Mo. App. W.D. 2018)).

"The standard for evaluating a claim of ineffective assistance of appellate counsel is the same as the standard for evaluating a claim of ineffective assistance of trial counsel." *William v. State*, 637 S.W.3d 396, 399-400 (Mo. App. W.D. 2021) (quoting *Jarrett v. State*, 572 S.W.3d 143, 148 (Mo. App. S.D. 2019)). Thus, "[t]o prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Id.* at 400 (quoting *Anderson v. State*, 564 S.W.3d 592, 617 (Mo. banc 2018)). Movant "must also prove that, 'if counsel had raised the claim[], there is a reasonable probability the outcome of the appeal would have been different.'" *Id.* (quoting *Anderson*, 564 S.W.3d at 617).

In relevant part, section 558.018 states, "[t]he court shall sentence a person who has pleaded guilty to . . . child molestation in the first degree when classified as a class B felony . . . to an extended term of imprisonment as provided for in this section if it finds the defendant is a predatory sexual offender." Section 558.018.4. The definition of "predatory sexual offender" includes "a person who . . . [h]as *previously pleaded guilty* to . . . child molestation in the first degree when classified as a class B felony." Section 558.018.5(1) (emphasis added).

13

Shores contends that, for him to be a predatory sexual offender under section 558.018.5(1), the evidence would have to establish that either the guilty plea in Sister's case occurred before the current offenses or the offenses underlying Sister's case occurred before the current offenses, and the evidence does not establish either. As such, he contends both trial and appellate counsel were ineffective in failing to challenge application of section 558.018.5(1) to his case.

At the evidentiary hearing on Shores's amended motion for post-conviction relief, trial counsel testified that he would have analyzed the predatory sexual offender statute and considered any objections to its application to enhance Shores's sentence, and that he would not have had any strategic reason for failing to raise challenges had they been identified. Appellate counsel testified that he had no specific memory of raising the predatory sexual offender issue in this case although he has raised it in other cases. He also testified that he did not believe a challenge to the predatory sexual offender finding would have been a meritorious claim on appeal.

The State argued that "previously pleaded guilty" means simply that the plea occurred before the court's predatory sexual offender determination in the current case. The State thus argued that Shores is a predatory sexual offender because his 2015 guilty plea to three counts of the class B felony of first-degree child molestation occurred before the court's 2017 determination that he is a predatory sexual offender.

The motion court rejected Shore's urged construction of section 558.018.5(1) and ruled that "previously pleaded guilty" in section 558.018.5(1) means before the sentencing enhancement hearing, not before the date the current offenses were

14

committed. The court thus concluded that the actions of trial counsel and appellate counsel were reasonable and did not create prejudice, as any challenge to applying section 558.018.5(1) to Victim's case would not have been meritorious.

"Statutory interpretation is a question of law, and questions of law are reviewed de novo." *State v. McDonald*, 626 S.W.3d 708, 712-13 (Mo. App. W.D. 2021) (quoting *State v. Downing*, 359 S.W.3d 69, 70 (Mo. App. W.D. 2011)). "Our 'primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Id.* at 713 (quoting *Parktown Imports, Inc. v. Audi of America, Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)).

The plain language of section 558.018.5(1) reflects a legislative intent that the plea serving as the predicate for enhancement occur before the status determination in the current case (but not necessarily before the conduct underlying the current case). *See State v. Chambers*, 437 S.W.3d 816, 820 (Mo. App. W.D. 2014) (finding, in the context of the similarly worded persistent drug offender statute, "the legislature intended that all felony drug convictions previous to the trial court's persistent offender status determination may be considered by the trial court to enhance punishment under the drug enhancement statutes").

Shores argues that interpreting "previously pleaded guilty" in this manner would render the word "previously" superfluous, because, as a practical matter, only convictions that have already happened can be the basis for enhancement. He explains, "[t]he State would never be able to prove 'predatory sexual offender' status to support the court's finding unless the plea[] . . . had already occurred by the time of the finding; therefore, it

15

is a given that the plea[] . . . must be previous to the finding, without needing to use the word 'previously.'"

But defining "predatory sexual offender" to include "a person who . . . [h]as *previously* pleaded guilty" provides a clear and direct contrast to one who has merely pleaded guilty or been found guilty *for the present offense*. *See* section 558.018.4 ("The court shall sentence a person who *has pleaded guilty* to . . . child molestation in the first degree when classified as a class B felony . . . to an extended term of imprisonment as provided for in this section if it finds the defendant is a predatory sexual offender.") (emphasis added). Because "previously" distinguishes a finding of guilt for an offense separate from the present offense being enhanced, the word retains its purpose and is not rendered superfluous when section 558.018.5(1) is interpreted, consistent with *Chambers*, as providing that "all [otherwise qualifying] convictions previous to the trial court's [predatory sexual] offender status determination," other than those for the present offense, "may be considered by the trial court to enhance punishment." *Chambers*, 437 S.W.3d at 820.

Shores attempts to undermine the relevance of *Chambers* to the current case by pointing to the following footnote in *Chambers*:

> We note, however, that Chambers's June 2011 conviction related to an offense which he committed in December 2010, some six weeks prior to committing the crime charged in this case. We therefore need not and do not decide in our ruling today whether [the drug enhancement statute at issue] permits the consideration of convictions which are based on conduct which occurred after the present charged offense.

16

*Id.* at 819 n.4. Shores interprets this statement as indicating that, had the case involved

convictions based on conduct that occurred after the present charged offense, the

outcome of *Chambers* would have been different. But that is mere speculation. We read

the footnote merely to clarify what was at issue in *Chambers*.[8]

Section 558.018.5(1) does not speak to when the conduct underlying the earlier

plea occurred. That is addressed in another part of the "predatory sexual offender"

definition that specifically addresses enhancement for conduct occurring before the

conduct underlying the current case. Section 558.018.5(2) includes in the definition of

"predatory sexual offender" a person who "[h]as previously committed an act" that

---

[8] On the surface, this court's opinion in *State v. Crosby*, 655 S.W.3d 25 (Mo. App. W.D. 2022), appears to support Shores's argument and undermine *Chambers*, but differences in the statute at issue in *Crosby* distinguish that case from the present one. In *Crosby*, the court ruled that the trial court plainly erred in finding that Crosby was a persistent offender under the prior/persistent offender statute (section 558.016) because the court improperly relied on findings of guilt entered after the commission of the offense at issue. *Id.* at 30-31. Under section 558.016, however, in order for the trial court to find that a person is a prior or persistent offender, "[t]he findings of guilt shall be prior to the date of commission of the present offense." Section 558.016.6. In contrast, as explained by the court in *Chambers*, the persistent drug offender statute does not contain a similar limitation:

> We conclude that [the persistent drug offender statute's] lack of similar limiting language found in [the prior/persistent felony offender statute] as to the timing of the prior offenses plainly and clearly indicates that the legislature did not intend [the persistent drug offender statute] to have the same limitation. Instead, the legislature intended that all felony drug convictions previous to the trial court's persistent offender statute determination may be considered by the trial court to enhance punishment under the drug enhancement statutes.

437 S.W.3d at 820. Because the key statutory language at issue here—previously pleaded guilty—is the same as the language at issue in *Chambers*, *Chambers* is more on point.

constitutes the same general acts as those described in section 558.018.5(1) without regard to whether those acts resulted in a conviction. Had the legislature intended section 558.018.5(1) to similarly include a requirement that the predicate offense occur before the offense in the present case, the legislature would have delineated that requirement. *Chambers*, 437 S.W.3d at 820. "The Legislature is conclusively presumed to have intended what it plainly and unambiguously said. If the statute so written needs alteration, it is for the Legislature, and not the court, to make it." *Id.* (quoting *Roberson v. State*, 989 S.W.2d 192, 194 (Mo. App. S.D. 1999)); *see McDonald*, 626 S.W.3d at 714 ("The legislature did not use any limiting language expressing an intent to impose a timing sequence on what constitutes a 'previously committed' act [for purposes of section 558.018.5(2)] other than with the use of the word previously.").

In *McDonald*, the defendant argued the trial court erred by finding him to be a predatory sexual offender under section 558.018.5(2) for Counts 3, 5, 7, and 9, based on conduct charged in Count 1 of the same case. *Id.* at 709. This Court examined the possible meanings of the phrase "previously committed," ultimately concluding that the predicate offense must "occur[] prior to the commission of the offense that the predicate offense enhances." *Id.* at 714. Applying the same logic to this case leads to the conclusion that the predicate plea must occur before the conviction for which the State seeks enhancement.

Moreover, adopting Shores's interpretation of section 558.018.5(1) would narrow the circumstances under which a defendant could be found to be a predatory sexual offender and, thus, subject to sentence enhancement. Doing so would be at odds with the

18

legislature's "wish[] to expand the circumstances under which a defendant could be found to be a predatory sexual offender." *Id.* at 713.

Shores meets the definition of predatory sexual offender in section 558.018.5(1), so an objection by trial counsel to the court's finding would not have resulted in a more lenient sentence. *Jackson*, 647 S.W.3d at 888. Likewise, had appellate counsel raised the issue on appeal, the outcome would not have been different. *William*, 637 S.W.3d at 400. Thus, Shores failed to carry his burden to show that trial counsel or appellate counsel was ineffective in failing to challenge the predatory sexual offender finding.

Points II and III are denied.[9]

### III. Shores did not prove trial counsel was ineffective for failing to move to amend Count XIII (Point IV).

In his final point, Shores argues trial counsel was ineffective for failing to move to amend Count XIII after the State indicated in its closing that it may not have met its burden of proof on that count. The motion court found insufficient evidence that the trial court would have granted a motion to amend Count XIII or how such an amendment would have changed the outcome of the case. Thus, the motion court concluded that trial counsel's performance was not deficient and did not result in prejudice.

---

[9] The motion court also found that, had trial counsel objected to the predatory sexual offender determination, the State could have amended the information to allege that Shores met the definition of "predatory sexual offender" in section 558.018.5(3) because he committed requisite acts against more than one victim. The parties spend a considerable portion of their briefs on this issue. Although we resolve Points II and III on other grounds, we note that, in this case, the predatory sexual offender finding was made after the verdict in a bench trial, and the State could not have amended the charging instrument at this stage of the proceeding over Shores's objection. Rule 23.08.

19

Count XIII charged Shores with statutory rape in the first degree for engaging in sexual intercourse with a child less than fourteen years old. During the State's closing argument at trial, the prosecutor stated,

> I do find it, Judge, problematic with regard to [Count XIII], and in th[at] event[], I believe that since the State's evidence was that the witness turned 14 in October, and the State's allegation was that it happened at least on one occasion, in the winter, I think the prudent thing for me to do is to concede that there's probably evidence that she could have turn[ed] 14, and th[at] count[ is] likely to wind up to being rape in the second degree. I don't think that–I think there's potential–I don't [know] how to tell you this, Judge. I mean–I don't think the State's proved beyond a reasonable doubt that she was under 14 because of it. Yes it was [cold]. It could have been cold in November, but the wood stove event was more likely later on in the year.

At the evidentiary hearing, trial counsel testified he had "[n]o specific memory about doing something about" the State's concession that it may not have carried its burden on Count XIII. In response to a question about whether there was "any reason why you wouldn't want . . . the [c]ourt to limit [Count XIII] to second-degree statutory rape instead of first degree," trial counsel replied, "No."

To demonstrate deficient performance for failure to file a motion, the movant must show that "had his trial counsel made the motion in question, it would have been granted." *Bode v. State*, 203 S.W.3d 262, 268 (Mo. App. W.D. 2006). Here, Shores cannot satisfy that burden because the prosecutor's statement reflected an inadvertent misstatement of the evidence. Victim testified that she was born on November 28, 1998, and not in October as recalled by the prosecutor. Victim also testified that the last time Shores raped her (the incident supporting Count XIII) was before Sister moved out of the family home, which occurred in October 2012, more than a month before Victim turned

20

14. And the evidence indicated that the "wood stove event" referenced by the prosecutor was actually associated with a 2011 incident that formed the basis for a different count in the second amended information.[10]

The evidence supporting Count XIII as charged was sufficient, and the prosecutor's statement to the contrary was inconsistent with the evidence. Thus, Shores failed to show that had trial counsel moved to amend Count XIII, the court would have granted the motion. *Bode*, 203 S.W.3d at 268. Because Shores failed to carry his burden on the performance prong, we need not address the prejudice prong of his ineffective assistance claim. *Reed*, 649 S.W.3d at 89.

Point IV is denied.

## Conclusion

Shores failed to prove that trial or appellate counsel provided ineffective assistance. Thus, the motion court did not clearly err in denying Shores's motion for post-conviction relief, and the court's judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

Mark D. Pfeiffer, Presiding Judge, and W. Douglas Thomson, Judge, concur.

---

[10] At trial, Victim testified that Shores raped her in the winter of 2011 after she had spent the day carrying wood for the family's stove.

21